UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | |
|---|---|
| SARAH ANNE HUSTON, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 5:20-CV-119-CHB |
| ) | |
| v. ) | |
| ) | **MEMORANDUM OPINION AND** |
| ANDREW M. SAUL, ) | **ORDER** |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on cross-motions for Summary Judgment [R. 13; R. 15]. The Plaintiff, Sarah Huston, exhausted her administrative remedies and brought this action under 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision denying her claim for disability insurance benefits. The Court, having reviewed the record and the parties' motions, affirms the Commissioner's decision.

## I.     Background

On March 1, 2016, Huston filed an application for disability insurance benefits. [Administrative Record (AR) 189-95] Her application was initially denied and again on reconsideration, after which she requested a hearing before an Administrative Law Judge (ALJ). [AR 121-22] The ALJ held a hearing on September 20, 2018 [AR 31] and subsequently issued an unfavorable decision on December 14, 2018 finding Huston was not disabled since January 14, 2016 [AR 7-20]. The Appeals Council denied her request for review [AR 1-3] and the ALJ's decision became the final decision of the Commissioner. Huston then filed her Complaint against the Commissioner in this Court. [R. 1]

**II.     Standard**

This Court's review of the Commissioner's decision is limited to determining whether it is supported by "substantial evidence" and made in accordance with proper legal standards. *Rabbers v. Comm'r Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla of evidence but less than a preponderance." *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 285-86 (6th Cir. 1994). "The substantial evidence standard is met if a reasonable mind might accept the relevant evidence as adequate to support a conclusion." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal quotations omitted). "Substantiality must also be based on the record 'as a whole.'" *Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 366 (6th Cir. 1984) (citing *Allen v. Califano,* 613 F.2d 139 (6th Cir. 1980)). However, "even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ," the Court must uphold the Commissioner's decision. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). This Court cannot review the case de novo, resolve conflicts of evidence, or decide questions of credibility. *Cutlip*, 25 F.3d at 286; *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

To determine disability under the Social Security Act, the ALJ must conduct a five-step evaluation. 20 C.F.R. § 404.1520.

1. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits.

2. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability.

3. Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment

meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience.

4. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled.

5. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

**III.    Analysis**

The ALJ followed the five-step evaluation process as required by SSA regulations. [AR 11-19] At step one, the ALJ found Huston had not engaged in substantial gainful activity since January 14, 2016 (the alleged onset date). [AR 12] At step two, the ALJ found Huston had the following severe impairments: affective disorders, anxiety disorders, and bipolar disorder. [*Id.*] However, Huston's substance abuse disorder and bulimia were found to be not "severe." [*Id.*] At step three, the ALJ determined Huston did not have an impairment or combination of impairments that met or medically equaled in severity one of the listed impairments,[1] specifically addressing listings 12.04, 12.06, and 12.13. [AR 13-14] At step four, the ALJ determined Huston's "residual functional capacity" (RFC).[2] [AR 20-21] The ALJ found that Huston could perform "a full range of work at all exertional levels," with certain limitations, including that the work involves only "simple, routine and repetitive tasks" in an "environment free of fast paced production requirements involving only simple, work-related decisions" with only a few changes in the workplace and only occasional interaction with the general public, co-workers, and

---

[1] The "Listing of Impairments" describes impairments that the SSA considers to be "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525(a).
[2] An individual's residual functional capacity is the most the individual can still do despite his or her impairment-related limitations. 20 CFR § 404.1545(a)(1).

supervision. [AR 14-15] Based on this RFC and the testimony of the vocational expert, the ALJ determined that Huston could not return to her previous work as a receptionist, service clerk, or office manager but could perform other jobs (janitor, "sorter," and "tester") existing in the national economy. [AR 18-19] Therefore, the ALJ found Huston was not disabled. [AR 19-20]

On appeal, Huston argues that the ALJ failed to give controlling weight to Huston's treating psychiatrist and failed to give good reasons for rejecting his medical opinion; that the ALJ erred by giving weight to the SSA's non-examiner consultants, erred by not finding that Huston met or medically equaled one of the listings of impairments for mental disorders, and failed to make findings as to whether Huston could maintain employment on a "regular and continuing basis." [R. 13-1]

**A. Treating Psychiatrist's and Non-Examiner's Medical Opinions**

Agency regulations mandate that an ALJ sufficiently consider the medical opinions from a claimant's treating sources[3] and generally require an ALJ to give a treating source's medical opinion "more weight." 20 C.F.R. § 404.1527(c)(2)). If the treating source's opinion "is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, it must be given controlling weight." *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009) (internal quotation marks omitted) (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. § 404.1527(c)(2)). However, where contradictory substantial evidence exists, the ALJ may reject all or a portion of the treating source's findings, *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 391-92 (6th Cir. 2004), provided the ALJ articulates "good reasons" for doing so. *Wilson*, 378 F.3d at 547; 20 C.F.R. § 404.1527(c)(2). These "good reasons" must be "supported by the

---

[3] A "treating source" is a claimant's "own acceptable medical source who provides [her] . . . with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [her]." 20 C.F.R. § 416.927(a)(2).

evidence in the case record and must be sufficiently specific to make clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reasons for that weight." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (quoting SSR No. 96–2p, 1996 WL 374188, at *5).

In explaining the reasons for giving the assigned weight to the source's opinion, the ALJ is required to consider certain factors: (1) "the length of the . . . relationship" (2) "frequency of examination," (3) "nature and extent of the treatment," (4) the "supportability of the opinion," (5) the "consistency . . . with the record as a whole," and (6) "the specialization of the treating source." *Wilson*, 378 F.3d at 544 (citing 20 C.F.R. § 404.1527(c)(2)). "This procedural requirement 'ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule.'" *Gayheart,* 710 F.3d at 376 (quoting *Wilson*, 378 F.3d at 544).

Huston argues that the ALJ failed to follow the treating source rule with respect to her treating psychiatrist, Dr. Croley. In August 2018, Dr. Croley drafted a narrative statement describing his clinical observations of Huston and her history of psychiatric care with him and mental health diagnoses and symptoms. [AR 492-493] Attached to the narrative statement was a "mental impairment questionnaire" in which Dr. Croley provided his opinion on Huston's mental impairments, functional limitations, and general ability to do varying degrees and types of work and common tasks. [AR 494-99] The ALJ addressed Dr. Croley's August 2018 opinion in his decision and assigned it "only partial probative value" (i.e., minimal weight).

Huston argues that an ALJ is required to always give good reasons "[f]or each factor" that must be considered when assigning weight to a medical opinion, that the ALJ failed to do so

here, and also failed to address five of the six factors in § 404.1527(c) in his decision.[4] [R. 13-1 pp. 8-10]

First, Huston is incorrect that an ALJ must give good reasons "for each factor." An ALJ need not expressly address every factor: "Although the regulations instruct an ALJ to consider these factors, they expressly require only that the ALJ's decision include 'good reasons . . . for the weight . . . give[n] [to the] treating source's opinion' — not an exhaustive factor-by-factor analysis." *Francis v. Comm'r Soc. Sec.*, 414 F. App'x 802, 804 (6th Cir. 2011) (quoting 20 C.F.R. § 404.1527(d)(2)); *see also Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 624, 630 (6th Cir. 2016) ("[T]he ALJ gave good reasons for discounting [the treating physician's] opinion, and satisfied the mandates of 20 C.F.R. § 404.1527 by considering *some* of the listed factors . . .") (emphasis added).

Second, Huston is incorrect that the ALJ did not consider most of the required factors. For example, the ALJ was clearly aware of length of the treating relationship between Dr. Croley and Huston because the ALJ cited to Dr. Croley's treatment notes from March 2004 (when Huston first saw Dr. Croley as a patient) [R. 16], and the ALJ thoroughly discussed in his decision the "narrative summary and impairment questionnaire" completed by Dr. Croley and states Huston started an ongoing and consistent treating relationship with Dr. Croley in February

---

[4] Although some language in Huston's Motion suggests that the ALJ was required to address these factors with respect to Ms. Areaux (Huston's therapist), Huston does not identify a "medical opinion" in the record from Ms. Areaux that the ALJ did or did not consider or fail to assign weight to. The record contains treatment notes from Ms. Areaux, but not medical opinions. "Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [her] symptoms, diagnosis and prognosis, what [she] can still do despite impairment(s), and [her] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1). Further, since Ms. Areaux is a therapist [AR 443-62], her opinions would not be "properly classified as an 'acceptable medical source' opinion" but rather is an "'other source' opinion. . . . [which is] not entitled to controlling weight, nor is the ALJ required to give reasons for failing to assign it controlling weight, as that requirement only applies to treating sources." *Engebrecht v. Comm'r of Soc. Sec.*, 572 F. App'x 392, 399 (6th Cir. 2014) (citing 20 C.F.R. § 404.1513(d)). Further, it is clear that the ALJ considered and cited to Ms. Areaux's treatment notes in his evaluation of the record evidence.

2011 [R. 17-18]. Additionally, the impairment questionnaire included the frequency in which Dr. Croley examined Huston (monthly to quarterly). [AR 494] The ALJ also considered the "supportability of the opinion" and "consistency with the record as a whole," as shown in the ALJ's explanation for only giving Dr. Croley's opinion "partial probative value." [R. 17] The ALJ explained that the opinion was "not supported by significant objective findings, but instead is substantially based on the claimant's subjective allegations." [R. 17] Dr. Croley had supported his opinion with the results of a test that is scored "based on the claimant's self-administered questionnaires," and the opinion "lacked substantial support from medical evidentiary findings, mental status evaluations, or other reliable objective testing." [*Id.*] Some of his treatment notes contradicted or failed to support the conclusions in his opinion and his opinion was inconsistent with Huston's "documented activities of daily living such as coaching baseball, driving, having Thanksgiving in Texas, considering having a third child, getting baptized, and pushing her son for perfection at school and in sports." [AR 18] Lastly, the ALJ explained that Dr. Croley's opinion was inconsistent "with the routine findings on examination" at the Lexington Clinic where the records indicate Huston had normal or no issues with judgment, memory, mood and affect, was always active and alert, and oriented to time, place, and person. [*Id.*] The ALJ clearly found Dr. Croley's opinion to not be supportable or consistent with the record as a whole, and the ALJ clearly explained his reasons for this finding. Therefore, the ALJ gave good reasons for discounting Dr. Croley's opinion. *Mueller v. Comm'r of Soc. Sec.*, 683 F. App'x 365, 366 (6th Cir. 2017) (finding good reasons for discounting treating psychiatrist's opinion which was inconsistent with treatment notes and claimant's daily activities).

Huston also argues that the ALJ erred by giving weight to the SSA's non-examiner consultants' opinions. [R. 13-1 p. 9] Specifically, the ALJ gave "great weight" to the opinions of

7

Dr. Bornstein and Dr. Cutler who were hired by the SSA to review Huston's medical records. Huston argues that these "opinions should have been given no weight as a matter of law," citing to *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 834 (6th Cir. 2016). [R. 13-1 p. 9] This is so, according to Huston, because Dr. Bornstein and Dr. Cutler were non-treating, non-examining state agency medical consultants who gave their opinions based on a review of a less-than-complete medical record. Specifically, their review did not include any mental health treatment records from Dr. Croley or Ms. Areaux. [AR 79-80; AR 91-93]; [R. 13-1 p. 5]

Huston is plainly incorrect that these opinions should have been given "no weight" as a matter of law,[5] but Huston is not wrong to point out that the opinions were not based on a review of the *entire* medical record. The Sixth Circuit has repeatedly held that SSA regulations require an ALJ to "generally" assign "more weight to the opinion of a source who has examined [the claimant] than to the opinion of a source who has not." *Miller*, 811 F.3d at 834 (quoting 20 C.F.R. § 404.1527(c)(1)). Nevertheless, an ALJ may still give greater weight to a non-examiner's opinion than that of a treating or examining source "under certain circumstances," such as when "the non-examining source's opinion 'is based on a review of a complete case record.'" *Id.* (quoting SSR 96–6p, 1996 WL 374180, at *3). But when "the non-examining source did not review a complete case record," the Sixth Circuit has held that it "require[s] some indication that the ALJ at least considered" this fact and the missing or subsequent medical records "before giving greater weight to an opinion from the non-examining source." *Id.* (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009)). Thus, an ALJ meets

---

[5] "There is no categorical requirement that the non-treating source's opinion be based on a 'complete' or 'more detailed and comprehensive' case record." *Helm v. Comm'r of Soc. Sec. Admin.*, 405 F. App'x 997, 1002 (6th Cir. 2011). Further, an "ALJ's decision to accord greater weight to state agency [non-examining] physicians over [claimant's] treating sources [is] not, by itself, reversible error," even when the non-examiner's opinion is not based on a review of the complete record. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009).

8

this requirement by indicating that he or she considered the missing medical records and subjected the non-examiner's opinion to some scrutiny. *Fisk v. Astrue*, 253 F. App'x 580, 585 (6th Cir. 2007) (explaining an ALJ is required to give "some indication that the ALJ at least considered" the medical records that post-dated the non-examiner's review); *Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 632 (6th Cir. 2016) (explaining the ALJ can give "some indication" that he or she "at least considered" that the source did not review the entire record by "subject[ing] such an opinion to scrutiny."); *Sloan v. Comm'r of Soc. Sec.*, No. 17-11150, 2019 WL 458163, at *2-3 (E.D. Mich. Feb. 6, 2019) (analyzing *Miller* and *Fisk* and concluding an ALJ must indicate he or she considered the "portion of the record that was available to the treating physician but not the non-examining state agency medical consultant" before giving greater weight to non-examiner's opinion).

Here, the ALJ clearly did both. The ALJ explained that the Dr. Bornstein and Dr. Cutler's 2016 opinions were assigned "great weight" because "they supported their opinions with objective and subjective findings," particularly with respect to their assessment of Dr. Sprague's opinion,[6] noting the internal inconsistency's in Dr. Sprague's opinion and how it was inconsistent with Huston's documented daily activities, such as caring for her children, completing household chores, shopping, and others. [AR 17] The ALJ did not summarily assign Dr. Bornstein and Dr. Cutler's opinions great weight with no explanation. The ALJ analyzed the opinions, cited extensively to the record, and explained why their opinions warranted the weight given. Further, the ALJ explicitly noted the "evidence received after Dr. Sprague's assessment" (i.e., the evidence not in record that Dr. Borstein and Dr. Cutler reviewed) and found that this

---

[6] Dr. Sprague was an agency consultant who examined Huston in May 2016. [AR 349-55] On exam, Dr. Sprague found Huston had multiple "marked" impairments. [AR 354] On review of Dr. Sprague's report and the medical record before them, both Dr. Bornstein and Dr. Cutler opined that Dr. Sprague's opinion deserved "little weight." [AR 78-88; 90-100]

9

evidence also "undermined" Dr. Sprague's opinion and "supported" Dr. Bornstein and Dr. Cutler's opinions. As examples, the ALJ cited to medical records from other health professionals in August, September, and November of 2017 (which all post-dated Dr. Bornstein and Dr. Cutler's review) and found these records were consistent with Dr. Bornstein and Dr. Cutler's conclusions. [AR 17] Therefore, the Court finds that although the ALJ gave great weight to two non-examiner's opinions who had not reviewed the entire record, the ALJ also gave sufficient indication that he considered this fact, as well as the medical records that post-dated the non-examiner's review.

### B. The Listings of Impairments

The "Listing of Impairments" describes impairments that the SSA considers to be "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525(a). A "claimant who meets the requirements of a listed impairment will be deemed conclusively disabled." *Rabbers*, 582 F.3d at 653. The listings are considered at step three of the five-step sequential process, where the ALJ considers "if the claimant's impairment matches or is 'equal' to one of the listed impairments" and if so, she "qualifies for benefits without further inquiry." *Sullivan v. Zebley*, 493 U.S. 521, 525 (1990); 20 C.F.R. § 416.920(a)(4)(iii); (d). If the claimant's impairments are not serious enough to meet or equal every requirement of a listing, then the analysis proceeds to the fourth and fifth steps. *Sullivan*, 493 U.S. at 525, 530; § 416.920(e).

Huston argues that the ALJ erred by failing to find that she met or medically equaled one of the listed impairments. [R. 13-1 pp. 12-14] In his decision, the ALJ considered the criteria for three listings: 12.04 (depressive, bipolar, and related disorders); 12.06 (anxiety and obsessive-compulsive disorders); and 12.13 (eating disorders). [AR 13-14]

10

To meet or medically equal the listings at 12.04 or 12.06, a claimant must satisfy the "A" criteria *and* the "B" or "C" criteria. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00. The "A" criteria for "depressive disorder" are satisfied with medical documentation showing five or more conditions from a list of depression-related symptoms.[7] *Id.* For "bipolar disorder," the medical documentation need only show three or more conditions from a list of bipolar-related symptoms.[8] *Id.* Even if the "A" criteria are satisfied for either depressive or bipolar disorder, the claimant must also satisfy either the "B" or "C" criteria. *Id.* The "B" criteria require either one "extreme" limitation[9] or two or more "marked" limitations[10] in four areas of mental functioning: the ability to understand, remember, or apply information; interact with others; concentrate persist, or maintain pace; and adapt or manage oneself. *Id.* Alternatively, the "C" criteria can be met by showing a "serious and persistent" medically documented history of the disorder for at least two years and evidence of ongoing serious treatment with only marginal adjustment, meaning a claimant only has minimal capacity to adapt to changes in his or her environment or to new demands in daily life. *Id.*

The ALJ concluded that Huston did not satisfy the "B" criteria, finding only "moderate" limitations in all four areas. [AR 13] The ALJ explained that the record contained no evidence that Huston has ever required "advanced treatment, such as psychiatric hospitalization or crisis stabilization." [*Id.*] Rather, she can complete tasks and engage in social interactions, including

---

[7] These are depressed mood; diminished interest in almost all activities; appetite disturbance with change in weight; observable psychomotor agitation or delay; decreased energy; feelings of guilt or worthlessness; difficulty concentrating or thinking; or thoughts of death or suicide.

[8] These are pressured speech; flight of ideas; inflated self-esteem; decreased need for sleep; distractibility; involvement in activities that have a high probability of painful consequences that are not recognized; or increase in goal-directed activity or psychomotor agitation.

[9] An extreme limitation is the complete inability to function independently, appropriately or effectively, and on a sustained basis in this area.

[10] A marked limitation means functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited.

taking care of three children, driving every day, attending sporting events, and completing two years of college. [*Id.*] She coaches a baseball team, uses Facebook, and goes shopping in public. [*Id.*] This evidence shows she does not have "marked" or "extreme" limitations in any of relevant areas of mental functioning. The Court finds that the ALJ's conclusion is supported by substantial evidence in the record.

The ALJ also concluded that Huston did not satisfy the "C" criteria. As explained previously, the "C" criteria require evidence (spanning at least two years) that a claimant relies on ongoing treatment but has obtained only "marginal" progress and the claimant's "adaptation to the requirements of daily life is fragile." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00. This may typically be shown through evidence of deterioration in the claimant's functioning such that he or she cannot function outside the home or a structured setting and may have required "significant change" in medication or treatment or periods of hospitalization. *Id.* The ALJ found that although the record showed a history of mental health issues over many years, there is no evidence of repeated periods of decompensation or any evidence that Huston has received treatment in a highly structured setting such as a hospital, halfway house, or similar environment. [R. 14] Accordingly, she failed to meet the "C" criteria.

Furthermore, the "B" criteria for 12.04, 12.06, and 12.13 are identical.[11] Because Huston failed to satisfy the "B" criteria for one of these listings, this means she failed to satisfy the same criteria for the others as well. The same is true for the "C" criteria that are only relevant to listings 12.04 and 12.06.

Nevertheless, Huston argues that she satisfies both "B" and "C" criteria, but only points to Dr. Croley's August 2018 opinion as evidence. [R. 13-1 pp. 12-14] As already explained, the

---

[11] The ALJ considered the listing at 12.13 and found Huston did not meet or medically equal its criteria. [R. 14] On appeal, Huston does not challenge the ALJ's conclusion with respect to 12.13.

ALJ found this opinion only had "partial probative value" because it was largely unsupported by objective findings, inconsistent with treatment notes, and was inconsistent with Huston's activities of daily living (i.e., coaching baseball, driving, traveling out of state for a holiday, etc.). Further, simply identifying other evidence that may support a different conclusion from the ALJ's does not mean the ALJ's decision is unsupported by substantial evidence. Rather, the Court finds the ALJ's conclusion that Huston did not meet the "B" or "C" criteria is supported by substantial evidence in the record. *Jones*, 336 F.3d at 475 ("[E]ven if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ," the Court must uphold the Commissioner's decision); *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854-55 (6th Cir. 2010) ("Commissioner's decision must be affirmed so long as it is supported by substantial evidence."). Huston's argument otherwise is without merit.

### C. Findings on Maintaining Employment

Lastly, Huston argues that "the ALJ's opinion is completely silent on the issue of sustainability" and so it must be reversed. [R. 13-1 p. 15] Huston is correct that an ALJ must determine what a claimant can do on a "regular and continuing basis." Indeed, that is exactly what the ALJ determines when he or she assesses a claimant's RFC—the ALJ considers "the nature and extent of [the claimant's] mental limitations and restrictions" and then determines her ability to complete different types of "work activity on a regular and continuing basis." 20 C.F.R. § 404.1545(c).

In determining Huston's RFC, the ALJ took into account her testimony that she alternates between "manic" and "depressive" states and this impacts her ability to function. [AR 15] However, the ALJ concluded that the medical evidence in the record was not consistent with

13

Huston's claimed level of intensity, persistence, and limiting effect of her impairments. [AR 16] The record shows a long history of Huston struggling with her mental health issues, but it does not indicate that her health problems have "progressed to the point where she can no longer maintain substantial gainful employment." [AR 16-17] Rather, she has been able to manage her mental impairments over the years, including while she was previously employed, volunteered to coach baseball, take care of her children, and completed two years of college. [AR 15; 17] Although Huston struggles with some social interaction and supervision, these limitations were incorporated into her RFC. Lastly, even though Dr. Croley opined that her impairments were so severe that she could not sustain employment without missing more than four days of work per month, the ALJ found that this opinion lacked any support in Dr. Croley's treatment records. [AR 18] Therefore, the ALJ properly considered Huston's ability to function on a "regular and continuing basis" and incorporated any limitations into her RFC, which was supported by substantial evidence in the record.

* * *

Based on the Court's review of the ALJ's decision and the administrative record, the Court finds that the ALJ's decision is supported by substantial evidence and was made in accordance with proper legal standards. *Rabbers*, 582 F.3d at 651. The Court will grant the Commissioner's Motion for Summary Judgment.

Accordingly, for the reasons stated above,

**IT IS ORDERED** as follows:

1. The Plaintiff's Motion for Summary Judgment [**R. 13**] is **DENIED.**

2. The Commissioner's Motion for Summary Judgment [**R. 15**] is **GRANTED.**

3. The decision of the Commissioner is **AFFIRMED**.

4. A judgment will be entered contemporaneously with this Order.

This the 28th day of June, 2021.

*Claria Horn Boom*
CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY